FILED
MISSOULA, MT

2005 NOV 10 PM 4 04

PATRICK E. DUFFY

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-07-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| W. R. GRACE, ALAN R. STRINGER, | ) | |
| HENRY A. ESCHENBACH, JACK W. | ) | |
| WOLTER, WILLIAM J. McCAIG, | ) | |
| ROBERT J. BETTACCHI, O. MARIO | ) | |
| FAVORITO, ROBERT C. WALSH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  Introduction

Defendants W.R. Grace and Co., a Connecticut corporation ("Grace"), and current and former Grace employees Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito and Robert C. Walsh, are charged by a ten-count Indictment with crimes arising from Grace's operation of a vermiculite mine near Libby, Montana (the "Libby Mine").  The defendants are charged with conspiracy to violate the Clean Air Act and to defraud the United States in

1

**SCANNED**

violation of 18 U.S.C. § 371 (Count I); violation of the Clean
Air Act, 42 U.S.C. § 7413(c)(5)(A) (Counts II, III and IV); wire
fraud in violation of 18 U.S.C. §§ 1343, 2 (Counts V and VI); and
Obstruction of Justice in violation of 18 U.S.C. §§ 1505, 2
(Counts VII, VIII, IX and X). The charges relate to the
defendants' alleged role in the release and distribution
throughout the Libby area of asbestos contaminated vermiculite.

Before the Court is a motion by Defendant Bettacchi on
behalf of all Defendants[1] seeking an order compelling production
by the government of documents underlying asbestos sampling tests
performed by the government or its experts on the soil and air in
the Libby area.[2] Defendants argue they are entitled to the
information under Rule 16(a)(1)(E)(i), Fed. R. Crim. P., because
it is material to preparing the defense. The government has not
stated a definitive position as to whether it believes the
documents underlying its sampling results are discoverable, but
contends that it has produced all responsive materials to date.

---

[1]Although it is styled as a joint motion, this motion is signed
only by counsel of Defendant Bettacchi and does not purport to be
signed on behalf of counsel for the remaining defendants. Defendant
Walsh filed a separate notice of joinder in the motion.

[2]The Defendants' opening brief in support of their motion fails
to comply with Local Rule 10.1(b) in that it is uses less than a 12
point font. Defendants have used impermissibly small fonts in other
briefs as well, such as their brief in support of their motion for a
bill of particulars. The Defendants' reply brief fails to comply with
L.R. 10.1(b) in that it is not in true double-spacing. The parties
are reminded to adhere to the Local Rules lest they be subject to
sanctions.

2

The only issue to be decided by the Court is whether Rule 16 requires production by the government of the documents underlying asbestos sampling results.  For the reasons that follow, I conclude that the government must produce the documentation directly underlying the test results the government will present at trial, but that it need not produce documentation relating generally to the facilities and procedures used in the testing.

## II.  Factual Background

Counts I through IV of the Indictment allege that Defendants violated or conspired to violate the Clean Air Act by causing the release into the ambient air of a hazardous pollutant, *i.e.* tremolite asbestos.  The government's preliminary exhibit list demonstrates that it intends to introduce at trial the results of numerous asbestos samples taken in the Libby area.  The Defendants requested in discovery the results of all such tests performed by the government or its agents that would be used at trial, as well as the underlying documentation relating to the collection and analysis of the samples.  The underlying documentation sought by the Defendants includes the following:

(1)  All documents relating to the collection or preservation of any of the samples, or to the procedures used to collect and preserve those samples;

(2)  All documents identifying the instruments used to analyze any of the samples;

(3)  All documents relating to the calibration of testing instruments at the time each of these

3

samples was analyzed;

(4)   All documents relating to the methodology and
      laboratory procedures used in analyzing any of
      these samples;

(5)   All documents relating to the analysis of the
      samples themselves (including, but not limited to
      log book entries concerning the preparation of
      samples, standards and equipment, and raw data
      sheets or other preliminary records of results);

(6)   All documents relating to the quality assurance/
      quality control procedures used to assure the
      reliability of the results of the analysis of each
      sample;

(7)   All documents relating to the analysis of
      laboratory standards and blanks undertaken as part
      of the quality assurance/quality control
      procedures at the same time that analyses were run
      of the samples; and

(8)   All documents relating to the chain of custody for
      each sample.

Two days after the Defendants filed the instant motion, on

August 3, 2005, the government produced a database of sampling

data from Libby compiled by a government contractor as well as

other sampling materials not previously produced.  The Defendants

concede that the government's production is largely responsive to

their discovery request, but ask that the Court clarify that the

government is required to produce all of the information covered

by the eight categories of documents requested above.

### III.  Analysis

Rule 16(a)(1)(F), Fed. R. Crim. P., requires the government

to, upon a defendant's request, produce or make available for

4

inspection and copying the results or reports of any scientific
test or experiment if:

> (i) the item is within the government's possession, custody
> or control;
>
> (ii) the attorney for the government knows—or though due
> diligence could know—that the item exists; and
>
> (iii) the item is material to preparing the defense or the
> government intends to use the item in its case-in-chief at
> trial.

The government does not dispute its obligation to disclose
the results of asbestos sampling tests, and appears to have fully
complied with Rule 16(a)(1)(F) through its disclosure on August
3, 2005.  The government has left unclear, however, whether it
believes it is required to provide the underlying information
contained in the eight specific requests listed above and whether
it has provided that information.  Accordingly, the only issue to
be decided for purposes of this motion is whether the government
is required to produce any of the underlying documentation
requested by the Defendants.

The government cites the Ninth Circuit's opinion in <u>United
States v. Iglesias</u>, 881 F.2d 1519 (9th Cir. 1989).  In that case,
the defense requested documents underlying the government's
results of testing on a substance that was determined by
government chemists to be heroin.  The government refused to
produce the documentation, which included chemist log notes,
protocols and other internal documents, arguing that its

5

obligation under Rule 16(a)(1)(F)[3] was merely to produce the results of the tests, not the internal documentation underlying those results. The district court agreed with the government's position and denied the defendant's motion to compel. <u>Iglesias</u>, 881 F.2d at 1521-22. The court of appeals affirmed, holding that the requested log notes "do not have the requisite formality to be considered as either a 'report' or a 'result.'" <u>Id</u> at 1523. The court went on to state, "Although it is possible that the requested log notes would allow [the defendant] to provide a more effective defense, the government is under no legal duty under [Rule 16(a)(1)(F)] to turn over such informal internal documents." <u>Id</u>.

The dissent in <u>Iglesias</u> disagreed with the majority's reading of Rule 16(a)(1)(F), but also noted that much of the documentation underlying government tests is discoverable irrespective of the scope of Rule 16(a)(1)(F) if the documentation meets the requirements of Rule 16(a)(1)(E).[4]  881

---

[3]Prior to the stylistic changes contained in the 2002 Amendments to the Federal Rules of Criminal Procedure, the substantive provisions set forth in current Rule 16(a)(1)(F) were located in Rule 16(a)(1)(D). The substantive provisions located at Rule 16(a)(1)(E) were located in Rule 16(a)(1)(C). <u>See</u> Advisory Committee's Note to 2002 Amendments, Rule 16, Fed. R. Crim. P. When referring to discussions of the rules in prior case law, the Court will use the current numbering and lettering.

[4]Rule 16(a)(1)(E) provides:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or

6

F.2d at 1527 (Boochever, J., dissenting).   The dissent
acknowledged that the defendant had waived any argument for
discovery under Rule 16(a)(1)(E), but held that had the defendant
not done so, that rule would have entitled her to have much of
the underlying documentation because the documentation was
material to preparing the defense and was in the government's
possession.   <u>Id</u>.

    In <u>United States v. Liquid Sugars, Inc.</u>, 158 F.R.D. 466
(E.D.Cal. 1994), the district court considered the <u>Iglesias</u>
opinion and found that the majority had not foreclosed discovery
of documents underlying testing through Rule 16(a)(1)(E).   In
<u>Liquid Sugars</u>, defendants charged with violation of the Clean
Water Act requested documents concerning the government's
sampling, testing and underlying analysis of wastewater.   The
district court concluded that the <u>Iglesias</u> opinion does not
prohibit discovery of underlying documents pursuant to Rule
16(a)(1)(E):

> [T]he majority in <u>Iglesias</u> clearly had the opportunity
> to read the dissent before publication.   The fact that

---

places, or copies or portions of any of these items, if the item
is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-
chief at trial; or

(iii) the item was obtained from or belongs to the
defendant.

7

the majority still chose to premise its decision
specifically, exclusively and repeatedly on the
provisions of [Rule 16(a)(1)(F)] without referencing
the dissent's comments with regard to [Rule
16(a)(1)(E)] leads the court to believe that the Ninth
Circuit intended either to leave the door open to such
discovery, or leave the deciding of the precise issue
to another day.

Liquid Sugars, 158 F.R.D. at 470.

The court went on to note that "it is not consonant with

good trial preparation to await analyzing scientific foundational

information, at times quite complex, until such time as the

government expert is relating the foundation at trial for the

first time." Id at 470. Based on this observation, the Liquid

Sugars court concluded that much of the underlying documentation

was material for purposes of Rule 16(a)(1)(E), applying a

materiality standard that requires a showing that the requested

documents would be helpful to the defense.[5]

> [T]he government will be required to establish a
> foundation for the test results when it first puts its
> expert on the stand at trial.  That foundation is the
> information which defendants now seek.  Since the
> foundation is an essential element to the government's
> case-in-chief, it necessarily becomes "helpful to the
> defense."

Id at 471-72.

Relying upon Rule 16(a)(1)(E), the district court ordered

production of "documents directly pertinent to the meaningful

---

[5]See United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995)
(quoting United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990))
(the materiality standard "requires a presentation of 'facts which
would tend to show that the Government is in possession of information
helpful to the defense'").

8

understanding of, or foundation for, the test results." Id at 473. This included chain of custody documents, laboratory bench sheets, testing procedures utilized, calibration standards utilized, and other methodologies actually employed for the testing. Id. However, the court denied as speculative requests for underlying documents not directly related to the testing at issue. Information held not discoverable included laboratory certifications, general audit reports of laboratory performance, quality assurance plans and batch quality control data for the year in which the testing was done, and general log books for the instruments used. Id.

The reasoning of the Liquid Sugars court is persuasive and will be applied here. The underlying documents that are directly pertinent to an understanding of the asbestos sampling results should be produced because the Defendants have established that those documents meet the requirements for production under Rule 16(a)(1)(E)(i). Of the requests made by the Defendants, the following items should be produced:

  (1)  All documents relating to the collection or preservation of any of the samples, or to the procedures used to collect and preserve those samples;

  (2)  All documents identifying the instruments used to analyze any of the samples;

  (3)  All documents relating to the calibration of testing instruments at the time each of these samples was analyzed;

  (4)  All documents relating to the methodology and

9

laboratory procedures used in analyzing any of these
samples;

(5)   All documents relating to the analysis of the samples
themselves (including, but not limited to log book
entries concerning the preparation of samples,
standards and equipment, and raw data sheets or other
preliminary records of results);

(6)   All documents relating to the quality assurance/quality
control procedures used to assure the reliability of
the results of the analysis of each sample; and

(8)   All documents relating to the chain of custody for each
sample.

The foregoing list excludes only Defendants' request No. 7,
which seeks "[a]ll documents relating to the analysis of
laboratory standards and blanks undertaken as part of the quality
assurance/quality control procedures at the same time that
analyses were run of the samples." This request is duplicative
of request No. 6 unless it is seeking quality control documents
for the entire laboratory used in the testing. In the event it
is duplicative of request No. 6, it is not needed. In the event
it is not duplicative, it is a speculative request for
information not directly pertinent to the test results and is
therefore denied.

**IV.  Order**

Based on the foregoing, the Defendants' Motion to Compel
Timely Production of Asbestos Sampling Data and Related Documents
(dkt #171) is GRANTED in part and denied in part as set forth
above. The government is instructed to produce all documents in

its possession responsive to Defendants' requests Nos. 1 through 6 and No. 8, and to do so no later than December 1, 2005.  If the government has already fully complied with its obligations as clarified herein, it should say so.

DATED this 10th day of November, 2005.

Donald W. Molloy, Chief Judge
United States District Court